UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EDDIE ULYESSES WISE<br>*Plaintiff* | CIVIL ACTION |
| VERSUS | NO. |
| RHODIUM CAPITAL ADVISORS,<br>LAKEWOOD POINTE APTS, LLC,<br>DASMEN RESIDENTIAL, LLC,<br>THE LYND COMPANY, AND<br>WILSHIRE INSURANCE COMPANY<br>*Defendants* | JUDGE<br><br>MAGISTRATE JUDGE |

FILED: _____     _____
                                                                                    DEPUTY CLERK

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel comes EDDIE ULYESSES WISE, a person of the full age of majority and domiciled in the Parish of Orleans, State of Louisiana, who files this Complaint against Defendants, as follows:

## THE PARTIES

### PLAINTIFF

1.

Plaintiff EDDIE ULYESSES WISE is a person of the full age of majority and domiciled in the Parish of Orleans, State of Louisiana.

### DEFENDANTS

2.

Defendant Rhodium Capital Advisors is a foreign corporation domiciled at 1013 Centre Road, Suite 403-B in Wilmington, Delaware. The company maintains a principal office at One World Trade Center, 85th Floor, New York, New York. It is the REAL OWNER of the subject

property. It sets of LLCs to hold the property, but all ownership and/or management decisions are made by its principal Mark Silber.

3.

Defendant RH East Lake, LLC. is a foreign corporation domiciled at 1013 Centre Road, Suite 403-B in Wilmington, Delaware. The company maintains a principal office at 46 Main Street, Suite 339, in Monsey, New York. This LLC was formed on November 7, 20217 to acquire the subject apartment complex in December 2017. It is owned by Mark Silber.

4.

Defendant Lakewood Pointe Apts, LLC is a foreign corporation domiciled at 1013 Centre Road, Suite 403-B in Wilmington, Delaware. The company maintains a principal office at 46 Main Street, Suite 339, in Monsey, New York. The sole officer/member is recorded as Jonathan Weiss who, upon information and belief, is an employee of Mark Silber and a resident of New York.

5.

Defendant Dasmen Residential, LLC is a foreign corporation domiciled at 3500 S. Dupont Highway in Dover, Delaware 19901. The sole officer/member is Israel Katz who is a resident of New York.

6.

Defendant The Lynd Company is a foreign corporation domiciled at 4499 Pond Hill Road in San Antonio, Texas 78231. The company maintains a principal office at 4499 Pond Hill Road in San Antonio, Texas 78231.

7.

Wilshire Insurance Company is a foreign corporation organized under the laws of North Carolina, which provided a policy of insurance that insured Defendants RH East Lake, LLC, Dasmen Residential, LLC, Lakewood Point, Apts, LLC, and The Lynd Company for the type of harm alleged in this complaint at all times pertinent hereto.

## JURISDICTION AND VENUE

8.

The basis for federal court jurisdiction is Diversity of Citizenship. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In this case, no defendant is a citizen of the same State as any plaintiff.

## JOINT AND IN SOLIDO LIABILITY

9.

Defendants are jointly and in solido liable and indebted to Plaintiff for such damages as are reasonable in the premises, including bodily injury, emotional distress, loss of enjoyment of life, medical expenses, property damages and relocation expenditures, together with legal interest thereon from date of judicial demand, until paid, and for all costs of these proceedings for the following reasons, to-wit:

## STATEMENT OF THE CLAIM

10.

Plaintiff was a lessee of an apartment complex located at 7001 Martin Drive, New Orleans, Louisiana 70126. The apartment complex has changed names and management

companies several times; however, it has been consistently owned by Mark Silber, the principal of Defendant Rhodium Capital Advisors since December 13, 2017.

11.

On December 13, 2017, Mr. Silber acquired the subject property through his business entity Defendant RH East Lake, LLC. At that time, he changed the name of the apartment complex to Laguna Run.

12.

From December 13, 2017 through September 2019, the subject apartment complex was managed by Defendant Dasmen Residential, LLC.

13.

In September 2019, undersigned counsel filed suit against RH East Lake, LLC and Dasmen Residential on behalf of hundreds of current and former tenants for breach of contract, negligence, strict liability, and breach of contract in connection with deplorable living conditions. As a result, Mr. Silber terminated the management contract with Defendant Dasmen Residential, LLC, and retained Defendant The Lynd Company to assume the property management contract at Laguna Run.

14.

In 2021, Mr. Silber formed Defendant Lakewood Pointe, LLC and did some kind of transaction to transfer the property to the ownership of Lakewood Pointe, LLC. He also changed the name of the complex to Lakewood Pointe.

15.

Mr. Silber is acutely aware of the deteriorating and deplorable conditions of the subject apartment complex and blames the property management companies for the deplorable living

conditions. Yet, he continues to authorize new leasing to unsuspecting tenants and is not addressing property conditions adequately.

16.

Plaintiff was a lessee of the apartment complex from 2014 through November 12, 2021. In 2020, when began to experience problems with his unit, he was occupying Apartment K102.

17.

In 2020, when Plaintiff's problems began, the apartment complex was called Laguna Run and it was owned by Defendant RH Eastlake, LLC. He began experiencing water intrusion from the apartment's ceilings likely emanating from faulty plumbing on the second floor causing water and urine to leak into his first-floor apartment. His complaints to Defendant Dasmen fell on deaf ears and the water intrusion issue was not adequately addressed leading to the presence of mold on his ceiling.

18.

Plaintiff suffered two separate slip and fall accidents in his apartment due to the water intrusion emanating from the ceiling in his living room. He fell in 2020 and was treated at Ochsner and he fell in 2021 and was treated at Ochsner. He had an occupational therapist coming to the apartment from September through November 2021.

19.

In 2021, as the water intrusion worsened and the mold proliferated, Plaintiff was experiencing respiratory symptoms, nasal irritation, sinus discomfort, watery eyes, throat discomfort, coughing, nasal symptoms, runny, blocked, or stuffy nose, headaches, itchy skin, weak voice, swallowing problems, and other more serious illnesses and/or diseases.

20.

In 2021, Plaintiff noted the presence of black mold in all of his kitchen cabinets from a source of water intrusion. When Plaintiff and his daughter brought this to the attention of Defendant The Lynd Company, he was evicted. His last day of tenancy at Lakewood Point Apartment Company was November 12, 2021.

21.

Plaintiff alleges that Defendants breached their contractual duties to Plaintiff who was a leaseholder at the subject apartment complex. Defendants did not tender the leased premises in a clean, safe, and good working condition. Defendant tendered the units failing to disclose conditions materially affecting the health or safety of Plaintiff in violation of the lease agreements. Additionally, once Plaintiff submitted maintenance requests, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody, and control. La. C.C. art. 2322.

22.

Under the provisions of the various leases with Defendants, Defendants were obligated to tender the leased premises in a clean, safe, and good working condition. The premises was tendered to Mr. Wise secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Plaintiff expressly pleads the legal doctrine of *contra non valentum.*

23.

From 2020 through November 12, 2021, Mr. Wise was continuously exposed to toxic mold and other deteriorating conditions which caused him extreme illness. He expressly claims the legal doctrine of *continuing tort* as a bar to any statute of limitations.

24.

The harmful conditions in Mr. Wise's apartment were not apparent and/or visible to him at the time that he moved into his apartment. He did not have any reason to believe that there was mold in the apartment unit when he moved in because the property management staff misrepresented to him that the apartment was habitable and free from environmental hazards and major plumbing./water intrusion issues at the time that he executed his lease.

25.

The building structures known as Lakewood Pointe Apts, LLC were built in 1970. The apartment complex has 442 units. It is comprised of multiple 2-story buildings. There units range from 729 square feet to 1,086 square feet in size. The apartment complex spans 30 acres around a stagnant pond infested with water moccasins and alligators. The pond is not fenced and poses a safety hazard to children and other residents.

26.

Lakewood Point Apartment Complex has substantial water intrusion issues causing the ruin of the building:

A. The majority of buildings consist of Duro-Last roofs that were sealed improperly. Since the construction of the building in 1970, the roofs have deteriorated over time. Traumatic roof damage is causing water-intrusion to the upstairs units. The upstairs units are leaking into the downstairs units. The roof has never been replaced; instead, the roof is consistently patched. The roofs are rotting and becoming sponge-like causing instability and dangerous conditions. Because the roofs are flat, water pools and there is no way for it to run off.

B. A few of the buildings have gray shingle roofs that cause water-intrusion because the buildings do not have gutters to redirect the flow of water.

C. The air conditioning units sit directly on the Duro-Last rooftops and were installed improperly. They should have been constructed on raised platforms; instead, they were installed directly on the roof causing water to pool on the rooftops. Therefore, the air conditioning units serve as a source of water-intrusion into second floor apartments. Some of the air conditioning units are inoperable and were just taken apart and left on rooftops.

D. Ten to twelve buildings have "floating slabs". The drainage system is deteriorating and causing the slabs to separate from the buildings. As a result, inches of water rise up from the slab and flood first floor apartments.

E. The foundation/slabs of other buildings are sinking, cracking, and shifting causing water intrusion into downstairs units. In some buildings, there were actual sink holes in the slab.

F. The cast iron pipes that were original to the building when it was constructed in 1970 are eroding, developing hairline fractures, and causing severe plumbing problems throughout the entire apartment complex.

G. The breach of the cast iron pipes is causing urine and feces to back up from toilets, tubs and sinks. It is also causing urine and feces to drain down walls and ceilings from upstairs apartments into downstairs apartments.

H. The siding on the buildings is retaining water due to the lack of gutters.

I. The windows are sealed improperly causing water intrusion.

J. The water intrusion is causing the wood framing inside of the walls to rot.

K. The water intrusion is causing the handrails and staircases to erode and become hazardous.

L. The water intrusion causes structural weakness of the second floors causing them to rot, weaken and collapse into first floor apartments. Numerous first floor ceilings have collapsed into first floor apartments. One to two ceilings per week would collapse due to water intrusion issues.

M. Doors are leaking causing water intrusion issues.

27.

The Lakewood Point Apartment Complex has widespread water-intrusion issues occurred over an extended period of time causing the ruin of the building and spurring widespread mold-intrusion throughout the apartment complex including apartment units and common areas.

28.

The apartments at Lakewood Point Apartment Complex shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex by air.

29.

There was also widespread mold intrusion in the common areas of Lakewood Pointe Apartment Complex including, but not limited to, laundry rooms, hallways, and stairwells.

## LEGAL THEORIES OF LIABILITY

## STRICT LIABILITY

30.

In leasing a thing, a lessor warrants that the thing is free from vices or defects that prevent the thing from being used for the purpose for which it was leased. That warranty extends to vices or defects that arise after delivery of the thing that are not attributable to the fault of the lessee and even to the vices or defects that are known to the lessor. Plaintiffs expressly allege Defendant property owners and/or property managers (former and current) tendered to them apartment units that contained defects [water-intrusion and mold-infestation] and caused them injuries. As such, Defendants are strictly liable for their damages pursuant to La. C.C. Arts. 2696 and 2697.

31.

Defendant property owners and/or property managers (former and current) caused Plaintiffs' damages as a result of the ruin of their buildings by virtue of neglect. Defendants failed to exercise reasonable care in performing maintenance, upkeep, and repairs on their properties. As such, Defendants are strictly liable for their damages pursuant to pursuant to La. C.C. Arts. 2317.1 and 2322.

## **NEGLIGENCE**

32.

Plaintiff's damages were caused by the negligence of the Defendant property owners and/or property managers (former and current) who failed to exercise reasonable care in performing maintenance, upkeep and repairs to buildings constructed in the 1970's and 1980's. Defendants have violated International Building Codes, National Fire Protection Association Life Safety Codes, City of New Orleans' Building Codes and have created hazardous conditions for residents and employees. The ruin of the buildings posing an unreasonable risk of harm to Plaintiff.

33.

The ruinous conditions of the property took many forms including: (1) roofs that needed to be replaced and were leaking; (2) cast iron pipes that were eroding, fracturing and leaking; (d) windows and doors that were not properly sealed and leaking; (4) heating, ventilation and air conditioning systems that were improperly installed and leaking; (5) floating slabs caused by cast-iron pipes; (6) mold in wall cavities; topes of ceilings; under carpets; behind interior walls; behind exterior walls; behind water-stained ceilings and walls; (7) rotting

windows, doors, stairways, balconies, and thresholds; (8) defective cladding; and (9) leaking chimney caps. As these conditions have persisted over a decade, the Court can presume that the property owners had constructive notice of the defect.

34.

Through mold testing results, failed inspection reports, third-party documents, and medical evidence, undersigned counsel has obtained evidence of actual exposure to mold, and that the exposure was a dose sufficient to cause health effects. Undersigned counsel has obtained evidence of a sufficient causative link between the alleged health problems and the specific types of old found at the complexes, namely: Stachybotrys, Cladosporium, Aspergillus, Ullocladium, Badiospores, Bipolaris, Ascospores, Chaetomium, Curvularia, Acremonium, Zygomycete. As such, Defendants are liable for Plaintiff's damages pursuant to pursuant to La. C.C. Art. 2315.

**FRAUD AND/OR NEGLIGENT MISREPRESENTATION**

35.

Plaintiff assert claims of fraud against Defendants property owners and/or property managers (former and current) under La. C.C. art. 1953 which applies to contract cases. "Fraud" is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Fraud may also result from silence or inaction. Defendant property owners and/or property managers (former and current) misrepresented the condition of the subject apartment complexes with the intent to lure and to deceive leaseholders and third-party payees like HUD/HANO. Plaintiff had a reasonable and justifiable reliance upon the misrepresentations and injury resulted.

36.

Plaintiff's damages pursuant to pursuant to La. C.C. Art. 2315.

## **FRAUD**

37.

Plaintiff assert claims of fraud against Defendant property owners and/or property managers (former and current) under La. C.C. art. 1953 which applies to contract cases. "Fraud" is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Fraud may also result from silence or inaction. Defendant property owners and/or property managers (former and current) misrepresented the condition of the subject apartment complexes with the intent to lure and to deceive leaseholders and third-party payees like HUD/HANO. Plaintiffs had a reasonable and justifiable reliance upon the misrepresentations and injury resulted.

38.

Prior to leasing the subject apartment units, Defendant property owners and/or property managers (former and current) had knowledge of extensive water-intrusion and mold-infestation in the apartment complexes; yet Defendants secreted this information from Plaintiff and instructed the leasing staff and maintenance workers to deceive Plaintiff regarding the condition of the apartment complexes. Defendants' misrepresentation, suppression, or omission of information regarding the condition of the apartment substantially influenced the Plaintiff's consent to the lease agreements.

**BREACH OF CONTRACT**

39.

Defendant property owners and/or property managers (former and current) breached their contractual duty with Plaintiff leaseholder, pursuant to lease agreements. Defendants contractually obligated themselves to give Plaintiff leaseholders the use and enjoyment of apartment units for a term in exchange for rent that the leaseholders bound themselves to pay. Defendants breach the contractual duty to deliver the apartments in good condition suitable for the purpose for which it was leased. As such, Defendants are liable for Plaintiff's damages pursuant to pursuant to La. C.C. Art. 2684.

**RES IPSA LOQUITUR**

40.

Plaintiff invokes the doctrine of *res ipsa loquitur*. The condition of the apartment buildings and the various code violations speak for themselves to infer negligence on the part of the defendants.

**DAMAGES**

41.

As a direct result of the combined acts of negligent conduct of the Defendants, Plaintiff has sustained bodily injuries (past, present, and future); emotional distress (past, present and future); loss of enjoyment of life (past, present, and future); medical expenses (past, present and future); property damages; and the cost of relocation.

42.

Based upon environmental sampling and analysis, undersigned counsel has confirmed that the mold was present in an environmental medium (e.g., air, water, and dust) that allowed it

to come into contact with Plaintiff and move along a biologic pathway (e.g., inhalation, ingestion, and absorption). The concentration of the mold and mold spores was sufficient to create a biologic response in human beings and animals that led to adverse health outcomes. The presence of the following mold, mold-spores, and mycotoxins, including, not limited to the following, has been confirmed in apartment units at the subject properties: Stachybotrys, Cladosporium, Aspergillus, Ullocladium, Badiospores, Bipolaris, Ascospores, Chaetomium, Curvularia, Acremonium, and Zygomycete.

## NON-PECUNIARY DAMAGES FOR BREACH OF CONTRACT

43.

Plaintiff seeks non-pecuniary damages for breach of a contract of lease. As a matter of law, a tenant is not precluded from seeking nonpecuniary damages for breach of a contract of lease." However, the plaintiff has the burden of proving the damage he suffered as a result of the defendant's fault. Mental anguish may be awarded. A lease for residential purposes includes, as one of its objects, the enjoyment of habitable living quarters. Testimony and photographic evidence of the living conditions is sufficient evidence to warrant damages for mental anguish." Mental anguish may also be awarded for property damage. In Louisiana, an award for mental anguish resulting from property damage is permissible when property is damages by acts for which the tortfeasor will be strictly or absolutely liable or when property is damaged by acts constituting a continuing nuisance.

## RETENTION AND PAYMENT OF EXPERTS

44.

Plaintiff also anticipates that expert testimony may be required and prays that all expert fees and expenses incurred by him be taxed as costs to Defendants.

## INSURANCE

45.

Wilshire Insurance Company is a foreign corporation organized under the laws of North Carolina, which provided a policy of insurance that insured Defendants RH East Lake, LLC, Dasmen Residential, LLC, Lakewood Point, Apts, LLC, and The Lynd Company for the type of harm alleged in this complaint at all times pertinent hereto. As such, it is liable for Plaintiff's damages with the Defendants it insured.

## REQUEST FOR TRIAL BY JURY

46.

Plaintiff expressly request trial by jury.

## RELIEF

WHEREFORE, the Plaintiffs pray:

A. That Defendants be served with a copy of this Complaint and cited to appear and answer same;

B. That after due proceedings had and a trial by jury, there be judgment in this matter in favor or the Plaintiff and against the Defendants declaring them liable to the Plaintiff, jointly, severally, and in solido, for compensatory damages from the date of judicial demand; and

C. That Plaintiff recover his costs for prosecution of this lawsuit, and for interest on all damages from the date of judicial demand until paid, and for all other general and equitable relief which the Court may find reasonable in the premises.

RESPECTFULLY SUBMITTED:

/s/ *Suzette Bagneris*                                             /s/ *Walter Leger, Jr.*

_____         _____
Suzette Bagneris (LSBA No. 22241)                Walter Leger, Jr.
Emile A. Bagneris III (LSBA No. 22240)           Matthew Landry
THE BAGNERIS FIRM, LLC                           LEGER & SHAW
1929 Jackson Avenue                              935 Gravier Street, Suite 2150
New Orleans, Louisiana 70113                     New Orleans, Louisiana 70112
Telephone: (504) 810-3995                        Telephone: (504) 588-9043
Facsimile: (504) 336-2198                        Email: wleger@ legershaw.com
Email: sbagneris@ bagnerislawfirm.com                   mlandry@ legershaw.com
ebagneris@ bagnerislawfirm.com
Attorneys for Plaintiff                          Attorneys for Plaintiff